Case No. 17-1054, National Business Aviation Association, Inc. et al. Petitioner v. Michael P. Huerta, Administrator et al. Mr. Simon for the petitioners, Mr. Walters for the respondents, Ms. Maynard for the intervener. May it please the Court, Richard Simon for petitioner. I requested three minutes for rebuttal. Well, we are here this morning asking the Court to overturn a settlement, and we understand that that's a big ask. We recognize that courts always want to maintain settlements where possible. In this instance, a settlement which may have been designed to balance the interests of a municipality and the federal government runs afoul of five statutes, or five sections of statutes, which were designed specifically by Congress to achieve that very end, which is to balance the interests of municipalities that own and operate airports and the interests of the federal government. Mr. Simon, it might be helpful to us if you began with the two procedural objections that the agency has raised. Number one, that your client likes standing, and number two, that this is not a final word. Can I add a third? Why isn't this in the Ninth Circuit? It needn't be, because this is an appeal to the circuits, which we are allowed 4611. Why should we choose to send this to the Ninth Circuit? Because we have gone this far in this court for an oral argument, there is no benefit to be gained from being in the Ninth Circuit. It has no better insight into this case. The fact that it addressed a portion of the issues below really has no bearing on the authority of the FAA to do what it did. No, but your formulation of your position as challenging an agreement is a bit cagey, because there is not only an agreement, there is a judgment, and it is a judgment of the California District Court, which we can't review. Correct. Well, the Ninth Circuit cannot review it under 46110. Oh, the Ninth Circuit could review it. The Ninth Circuit can review the consent judgment, including any legal challenges to it. Well, the Ninth Circuit can review. I'm not so sure that's true, Judge Katz. The Ninth Circuit has the ability, if we have a 46110 challenge, to address the issues that are raised by that. I would suggest that the judge's order of the consent decree itself is not one of those issues, except to the extent that it constitutes a final order, so you've got to get there first. But challenging the entry of a consent decree is an entirely different process and would have required us to intervene in that action. Another way to get at the same issue is the agency's argument that this is not a final review of the order because it doesn't fix any rights or obligations, given the language in the settlement, that it doesn't become effective until it's approved by the California court in a consent decree. So that's another way of getting at the same question. So why isn't this? I mean, it does say this does not become effective until it's approved by the California court. Correct. Well, first of all, that was a decision and part of the decision that the FAA made in the first instance in entering into the settlement agreement and including a condition. That decision the FAA made to enter into the settlement agreement didn't fix any obligations or rights. Oh, it certainly did, Your Honor, with respect. It absolutely did, but it made them conditional on the signing or approval of a consent order. But that did not make it any the less a final order. In this court, domestic securities is the case that comes to mind where the final order that this court found was conditioned on entry in not a judicial proceeding but another action by a separate entity. The only thing left to be done in that case was action by the agency itself. Here you have it's dependent on actions by a different branch of government. No, the difference is correct that one is a different branch of government. One was a different entity altogether that had to act on the condition. But this court was very clear that the reason that subsequent condition didn't... The order in the case you're talking about had been completely approved. The only question was whether... the only thing left was implementation. Here it's all dependent on the California court. Well, it's all dependent on that. Yes, it's a condition. And the judge entered an order which, Your Honor, if you take a look at that order, it's a one-sentence order that quotes from another case, an older case, and says, will you approve it? There was no substance to that order. There was no role for the court to play unless subsequently invoked. Finality is supposed to have a practical element to it. So if the situation is the parties go to the court and have an agreement and propose that it be entered as a judgment and the court enters it as a judgment, what's left of the agreement divorced from the judgment? The agreement is approved by the judgment, but the agreement contains all of the terms it... Your Honor knows what it does. I mean, it releases this and does that. Those are all... I understand, but the judgment does all of those things as well. Why isn't the right way of thinking about it, the agreement is either merged into or superseded by the final judgment? Or the agreement stands with a condition that has occurred, and the agreement which has all of the terms remains the instrument. Right. Those are the possibilities. Why is yours more plausible to the extent that, look, if the parties ever have any dispute about this, they're going to be going to the court and asking for enforcement of the judgment. They're not going to be bringing some free-floating independent contract action on the agreement. That's correct, but the issue here when you look to... that final order, and whether that final order is just the settlement agreement, as we believe it is, with a contingent element, or is some combination of the two, the government doesn't really tell us what it is. It certainly can't be the judge's order, the consent decree standing alone, because there's nothing there. So if it's some combination of the two, it's still a final order. I'm not sure I understand what you just said. What do you mean there's nothing there? There's nothing... What do you mean? There is nothing of substance in the consent decree. Well, didn't the consent decree approve the settlement and make the settlement enforceable?  So why would you say there's nothing of substance? Well, what I'm saying is that if the consent decree itself is the only thing that is a final order, there's nothing there standing alone. It has to capture the settlement agreement. You're totally right about that, but that still raises the question of whether any rights or obligations flowed from the signing of the settlement agreement. And at some point, Your Honor, I think that does become a semantic rather than a legal issue, because again, 46110 gives a non-party, someone stranger to the agreement, the ability to challenge the authority of the FAA or any agency, the FAA in this instance, to enter into that arrangement, whether it is contingent on a judgment or a consent decree or not. And that, to me, is the real crux of this case. And the Cleveland decision out of this court, out of Cleveland County versus Cleveland whatever, I don't recall, is exactly that, that a stranger to a consent decree can challenge it in a separate action. In that case, it wasn't 46110, and it wasn't, it was challenged, was properly brought under the Administrative Procedure Act in another district court. If the challengers had been granted intervention, couldn't they have raised all of these arguments, Surplus Property Act and so on, in the California District Court? That's an interesting question, because the Ninth Circuit does seem to say that you can raise legal issues, but that would be very risky if, for example, Judge, if we were able to overcome opposition and intervene, which we're not able to do, and Judge Walter looked at it, what happens if Judge Walter decides that maybe he doesn't have jurisdiction? That's a problem for us, so we would have had... Well, you could have appealed it. Well, we could have appealed it, but we would have had to file 46110 in any event to protect ourselves, because the 60-day clock is ticking away while we're engaged in all of this. Which brings me back to my question. Why didn't you file your 46110 in the Ninth Circuit? I'll be very blunt about that, because we didn't have to. We are entitled to be in this court, and 46110 gives us the choice. This is the court, in our view, that handles most administrative law issues, and this is a national issue. This is a national case. Here we are. Could we have filed it in the Ninth Circuit? We could have. We saw no advantage to doing that and no benefit to doing that, and, of course, this court has the power to send it back to the Ninth Circuit if it so wants. But, again, I suggest, having gotten this far, and I see my time is up, but having gotten this far, there's no benefit. Well, this settlement agreement slash consent decree, I mean, that's how it's titled, and it's drafted like settlement agreement slash consent decrees are drafted every day in federal district courts across this country. Sure. It's a settlement agreement, and then the only thing that makes it a consent decree is a line at the bottom that says it is so ordered, where a district judge signs off on it. And it's a rarity. In fact, I've never seen it, and I don't think any case has come up that we have seen, where the agency involved then says that makes it proof from a 46110 challenge. That the fact that it was a consent decree somehow changes this from what otherwise would clearly be a final order. I don't think anybody contends that if there was no consent decree, this would be a final order, and it does all the things that a final order would do from the FAA, that all of a sudden it magically isn't a final order because they've chosen to use a consent decree. There's no case that so indicates and that changes the character. And as I say, the domestic security case suggests there's nothing wrong with the contingency. I grant you the contingency there was not a court, but should that really make a difference? It's a complication that the government obviously is relying on, having set it up to begin with, but it really should not be a barrier. So if the FAA in the Central District of California filed a motion for summary judgment, let's just suppose in the course of that litigation, is that motion a final order? No. Okay, so if the motion is granted by the district court, and then there's a judgment in favor of the FAA, then the court's judgment is a final order, but it's not appealable under 46110, right? No, it's not a final order. It's a final order in lay terms. It's not a final order of the FAA. It's a final order of the court. Right, but it's not a final order as in caps, subject to 46110. It is an order that is final, or appealable, I guess. So an FAA motion for summary judgment, which asks the court to enter judgment on its behalf, isn't necessarily a final order for 46110 purposes? Absolutely not. So why is this? Because this is a decision of the FAA, which is subject only to a contingency, which does not convert it into a court order in its entirety. It is still a final order of this agency. And if you think about, I would suggest, the implications of that, that if the FAA can protect itself from review under 46110, which is absolutely essential whenever it does something like it has done here, which is to release an airport from obligations, if it can shield it from review by the simple expedient of asking for a consent decree, which is a very common thing. Why do you keep calling that a simple expedient? By making it conditional on a consent decree in the Central District of California, it's subjecting itself to the jurisdiction of a federal court reviewed by the Ninth Circuit. That's true. So does that screen it from 46110? That's the question, and I suggest it does not. It turns on whether this is a final order. I'm sorry? It turns on whether this is a final order. That's absolutely correct, of course. Okay. Thank you. We'll hear from the government. Thank you, Your Honor, and may it please the Court, Tyson Walters for the government. For an order to be final and reviewable, it must determine rights and obligations. That is, in the words of this Court, it must have a direct and immediate effect on the day-to-day business of the parties challenging the action. But as Your Honor's questions demonstrated, it was the consent decree and not the settlement agreement that had that direct effect. The settlement agreement was a— Can I ask? There are a couple of provisions that cut against this view that now it's all about the consent decree. So one of them is provision that says the consent decree expires, and once it expires, the expiration of the consent decree does nothing to impact the validity of the agreement, which continues to have force and effect. Doesn't that tend to support your friend's view that the agreement is not just superseded, it has independent force and effect? No, Your Honor, for a few reasons. The first, of course, is that if the agreement were not entered as a consent decree, it would, on its face, have had no force and effect. So it's difficult to say that it's the settlement agreement rather than the consent decree. No, but why wouldn't you say the agreement became— the agreement, in addition to the consent decree, became final upon entry because it was drafted so that the agreement piece of it would survive independent of and beyond the judgment piece of it? Once the consent decree does expire in 2028, Your Honor, it's true that at that point the settlement agreement might be doing some work. It's actually difficult to see exactly what it is that would be— what work it would be doing once the consent decree has expired, but presumably that was just in there so that the parties would have had protection and make certain that in 2029, for instance, the FAA won't suddenly come calling after the city. Let me ask you one more about pre-expiration, which is that only certain parts of this consent decree are judicially enforceable, and one of the parts that's not judicially enforceable is the provision that says Santa Monica can stop running the airport in, whatever, 2029. So why doesn't that strongly suggest that what the parties wanted and what the court ordered was a sort of hybrid, and some pieces of it would operate more like a judgment, and others, including the closure provision that they are most concerned with, really were just the agreement? So a few things. The first is, again, I would return to the fact that this agreement would have had no force were it not entered as a consent decree, but as regards to that, it's, I think, just a consequence of the fact that the consent decree on its face expires at the same time that the city is permitted to close the runway. No, no, but even before expiration, this is in, I'm looking at 8B, I think, says the district court has jurisdiction to provide injunctive reliefs only as to parts 2 to 4,  and the provision at issue here about closing the airport after 2028 is in part 6. So that piece of it is never subject to enforcement through injunction. That's true. I'm not certain what the injunction that the district court would need to do, would need to enforce there. I mean, nothing needs to be done to permit the city to close the airport. All that would need to happen would be for the FAA not to take affirmative action against the city, and obviously if it were to do that, then the city could return to the FAA and say, you just violated this promise that we had for many years. So I'm not certain. I assume that the reason that they didn't write that in is something that would be judicially enforceable, is that there just is no necessary mechanism for judicial enforcement of that provision. Let me ask you, are you done with that? Yeah. I wanted to ask you about your argument that they lack Article 3 standing. You're still taking that position? We are, Your Honor, though I would emphasize that much of that argument is based on their own admission that they would require an injunction against the city in order to have relief in this case. I see. But, I mean, setting that aside, if we were to, if this court was to invalidate the settlement agreement, they would then have a powerful basis for going to the California court and asking it to vacate the decree. So they would certainly... Why wouldn't that give them Article 3 standing? In the words of Utah Supreme Court's Utah v. Evans, it would, quote, quote, significant increase in the likelihood that the plaintiffs would obtain relief. I think what it would entitle the petitioners to do would be to argue to the district court that it should invalidate the consent decree, but the district court, of course, is under no obligation to do so. That's why I emphasize the word significant likelihood. It seems to say it wouldn't obligate the California court to set aside the decree, although it would create an interesting issue, wouldn't it, since the court already found it to be fair, reasonable, adequate, presumably in compliance with the law, so then if we invalidate it, who knows? So is that why you think it's not a likelihood? I think the fact that an appeal of that approval would lie to the Ninth Circuit and that the district court already found that it was fair, reasonable, adequate, and presumably in compliance with law and that that would be appealed to the Ninth Circuit is certainly significant. I think what petitioners are really asking for is an advisory opinion that they hope would persuade courts within the Ninth Circuit that the consent decree was unlawful. But the district court, in fairness, didn't have before it any of these arguments that your friends on the other side are trying to make and did try to make and tried to intervene, and the district court said no. It's true, Your Honor, that the district court didn't have those arguments before it. That is in part because petitioners did not. So we can't really construe the district court's finding of a reasonable agreement as compelling evidence that it would not take into account an opinion from this court in validating the agreement on legal grounds. Certainly not, Your Honor. We're not saying that it would or wouldn't reach the same conclusion as this court. It's that it would be a separate conclusion that it would ultimately have to reach independently. And I would emphasize— But if there's at least a significant likelihood— I don't want to quibble over the adverbs, but there's some chance of that. We're back to Judge Tatel's point that if they go from being absolutely foreclosed to having a colorable argument and support from this court, why isn't that good enough for redressability? That still seems, to me at least, to be an advisory opinion. I mean, the only thing that— Your Honor's opinion would undoubtedly be very persuasive, but it wouldn't have any legal effect. And I did want to make clear that the Ninth Circuit and the district court did have the ability to consider all of these arguments that are being presented. All of the merits arguments could have been made to it. And Petitioners chose not to seek to intervene, and they chose not to ultimately appeal were they denied intervention  Thank you, Your Honor. Can I just ask on the merits? If we reach the merits, why don't we have to remand at least on the Surplus Property Act point? The court made some of the required findings, but not all of them, and there wasn't a 30-day notice period. And maybe those aren't the gravest violations in the world, but they do seem pretty clear. So, if this court were to reach the merits, if it concluded that it had jurisdiction, Petitioners' arguments largely hinge on there having been an improper release of airport obligations. And in order for there to have been a release of airport obligations, there had to have been obligations to release. And Petitioners have made absolutely no attempt to show that's true in arguing that an exercise of the Attorney General's settlement authority is unlawful, and that is a necessary predicate to their argument. You don't think the Surplus Property Act would apply to not just a property right that's open and shut, but one that's contested and the government has asserted in case after case? Your Honor, I think if they want to say that the government acted unlawfully in entering into an agreement, yes, they would have to show that, in fact, a release was actually granted, and that requires the relitigation of. And there's no question the release was granted. It's on the face of the agreement. Well, certainly the agreement makes clear that if a release is necessary, that it would be granted, but the agreement also made clear that it wasn't conceding either side's legal position. And the position of the city, which was hard-fought, was that there was nothing in force that could be released. I understand that, but the federal government's position is that there was a continuing obligation and equally hard-fought and worth litigating. I know the Civil Division doesn't pursue frivolous cases lightly, so you gave up something of value without the statutory notice requirements. But the statutory notice requirement, Your Honor, isn't for giving up something of value. It's for granting a release, and the question is was it? A release of something, at least a litigable position, which had value to the federal government. I don't think it's a release of a litigable position, Your Honor. It's a release of an obligation. And petitioners, I mean, this underscores what's so strange about this collateral attack on the consent decree is that it really does require relitigation of the merits of the cases that were settled within the Ninth Circuit. Another way that I think is helpful to think about this, Your Honor, is as an exercise of the Attorney General's settlement authority. And in order to say that the Attorney General acted unlawfully, obviously a settlement agreement is unlawful if it violates a statute, but it would still be petitioner's burden to come forward and say that the Attorney General did something wrong, that it violated a statute. And it does seem that the necessary predicate to that is that a release was actually granted and, therefore, that there was something in force to be released. Okay. Thank you. Thank you, Your Honor. May it please the Court. Deanne Maynard for the City of Santa Monica. This Court should not allow petitioners to collaterally challenge the consent decree here. If petitioner's gambit succeeds, parties— Are you making a standing argument or a final order argument, or both? Both, Your Honor, and also just a practical argument. If petitioner's gambit succeeds, parties will be discouraged from settling with the United States. But I concur with the United States that there is neither final agency action here nor redressability. But to take a step back, the city had extremely strong argument— You don't think it's enough for standing that invalidation of the settlement agreement here would increase the likelihood that they could get the consent decree vacated? No, Your Honor, I don't, for two reasons. And why? Well, just the notion that they would have to take an order from this court to the district court in California and ask it to consider it shows what an odd procedure this is, especially since the place they should have taken it would have been— Yeah, odd, odd, right. But the question is, is there sufficient redressability for standing? Well, I think— That's the question. I think it's like this court's decision in Dynapwest, Your Honor, where the Sixth Circuit had finally decided an issue, and this court said it was not going to decide the petitioner's arguments before it because deciding it would have no practical effect because a sister circuit had already decided the issue. But it would have a practical effect. They could go to the district judge in California and say, look, the predicate on which you entered the consent decree has now been invalidated. They could take it— Don't you think that the court would at least take that seriously? The court will take it seriously, no doubt, Your Honor, but it's too late— And that's my whole point. That's the whole point. So it increases the likelihood that they will succeed. That's all they have to show. I think for justiciability under this court, for the notion that it would have practical immediate effect on their rights, it wouldn't. They would be taking it to the California district court and asking the district court to consider this court's views on the lawfulness of the settlement. They should have instead, if they wanted to challenge this, complained in the consent decree court. That was the court with jurisdiction over the consent decree. That consent decree has now been final and unappealed for over a year. And it's too late for them to go to the consent decree court now. They came here 12 days after entry of the consent decree. The United States moved to dismiss their petition here for lack of jurisdiction 12 days later. And in that petition, the United States specifically said, if petitioners desire to challenge the consent decree, they can attempt to seek relief from the Central District of California, the court that actually reviewed and approved the settlement, and perhaps appeal to the Ninth Circuit. That's at page 7. That was filed on February 24th. They did not go there, and they stayed here. Judge Wilkins, to your question, this court— At least, just on that point, at least some of the challengers, two different groups of challengers, as I understand it, tried to intervene and were denied pretty summarily. So why doesn't that cut in their favor, at least to the extent that they're trying to go to the preferred forum, and that was foreclosed to them? Two points about that, Judge Katz. Two of these petitioners tried to move to intervene before the settlement agreement. They had a right in the Ninth Circuit to immediately appeal that. They did not. Right, but at that time, pre-settlement agreement, there might have been pretty good reason to think that the FAA adequately represented the interests on that side of the case, and that appeal wouldn't have been very compelling at that time. Even so, then, Your Honor's point makes a good point, that if they wanted to seek intervention, they needed to try to do so again, and some of these petitioners are not yet salt and denied intervention. Post-agreement. That's right, and they came here. They came to this court 12 days after the consent. Okay, but then we have the agreement is announced, what, Friday night and entered on a Monday morning or something like that? It was announced on January 28th, which was a Saturday. The parties moved for the consent to be created to be entered on January 30th, and it was entered on February 1st. In the Ninth Circuit, however. So we're faulting them for, whatever, missing a four-day window, four or five-day window, including the weekend? No, Your Honor. The law is clear, the Supreme Court has made clear, that one can petition to intervene, can move to intervene, to challenge a consent decree after its entry, and the Ninth Circuit has suggested that one needs to do that, however, within the time to appeal, which here did not run until April the 3rd. Yet they came to this court on February the 13th. The United States moved to dismiss for lack of jurisdiction in this court on February the 24th. They opposed that motion in this court on March the 6th, all within time under the Ninth Circuit's law to seek to intervene to challenge the consent decree in the proper court, yet they did not do so. The city has acted in reliance on this consent decree. It has dismissed its litigations. It has spent millions of dollars shortening the runway. Neither party got what they wanted out of this settlement agreement, and third parties on both sides are unhappy with the outcome, but it is final. If petitioners wanted to challenge it, they needed to go to the consent decree court and appeal, if necessary, to the Ninth Circuit. That was the proper mechanism to raise all of these challenges, and yet they did not do it. Judge Wilkins, to your question, no, this court cannot and should not transfer this case to the Ninth Circuit. First, there's no jurisdiction in any court of appeals to hear this under 46110 for the reasons the United States has stated, and so therefore there would be no jurisdiction to transfer it and no jurisdiction for the Ninth Circuit to hear it. If they wanted their complaints heard, they needed to go to the district court. The city would request that the court dismiss this petition. All right. Thank you. Thank you. Let's see. Mr. Simon, you were out of time, but you can have two minutes. Thank you, Your Honor. Just very briefly, the question of obligations, not proving obligations, the only place that we have certainly adequately alleged it in the circuit in our opening brief, the only place we could have proven it would be in two cases that were dismissed by the other side. They dismissed both the district court and the federal Ninth Circuit cases, which is the only locus where you can prove that they were in fact obligated. I think that's a red herring. Second of all, on redress, under the Utah case, I think you've already indicated, the likelihood of redress is the test. If this court vacates the settlement, then the city is back to being obligated, and that alone, it will not be able to close the airport, absent some further action by some court, and that alone is substantial redress with nothing else. It's actual, not likely. What impact does it have on the shortening of the runway, which has already occurred? Well, that occurred well after this case was filed, and that's on the city. They chose to go ahead and do it. It hasn't been shortened per se. It's been restructured, so the physical runway is still there. Can it be undone with a can of paint, I think, is the answer to that. I don't mean to be flip about it. It's not a big deal. And so, again, I'll close with just can an agency, can the FAA, insulate itself from review by— You keep starting your sentence that way. It has not. It's only insulated its action for review in this court. Or in a certain— Not in the Central District of California. No. It has insulated itself from 46110 review, wherever. Well, that's because if its action isn't final, then it isn't reviewable under the statute. Granted, that's the issue. Thank you, Your Honor. Okay, thank you. Case is submitted. Please call the next case.
judges: Tatel, Wilkins, Katsas